# Charlestown.

## Harmison v. Loneberger et al.

(Absent, Johnson, Judge).

Decided September 10, 1877.

1. A case prematurely heard and decided, and cause remanded to circuit court with leave to plaintiff to file an amended bill making new and necessary parties, and leave to parties to take and file other and further depositions and documentary evidence. (See opinion of Court.)

1877.
August Term.

This was an appeal from a decree of the circuit court of Barbour county, rendered on the 20th day of April 1870, in a cause in chancery then pending in said court, in which Charles Harmison, was plaintiff, and Jacob Loneberger and William M. Hayes were defendants, granted upon the petition of the defendant, Jacob Loneberger.

The Hon. Thomas W. Harrison, then Judge of said circuit court, rendered the decree complained of.

The case is sufficiently stated in the opinion of the Court.

*T. A. Bradford*, for appellant.

There was no appearance for the appellee.

Haymond, Judge, delivered the opinion of the Court:

On the 16th day of November 1868, the plaintiff commenced his suit in equity in the county of Barbour, against the defendants, Hayes and Loneberger.

On the first Monday of December 1868, at rules, the plaintiff filed his bill in the cause in the clerk's office. In the bill the plaintiff alleges that on the 5th day of November 1866, the said Loneberger sold to said Hayes a certain tract of land lying in said county of Barbour, adjoining the lands of Isaac Booth's heirs and others, containing two hundred and fifty-seven acres (describing the boundaries), for which said Loneberger and wife executed to said Hayes a deed with general warranty, reserving therein the vendor's lien for the unpaid purchase money; that said sale was made for the consideration of $2,000.00; $1,066.66⅔ was paid in hand, and for the residue the said Hayes executed to said Loneberger his two obligations for the sum of $466.66⅔ each; that the last of these obligations became due on the 5th day of August 1868; and on the 10th day of the same month the said Hayes paid thereon $47.25. An official copy of said deed is filed with the bill, and the material contents of the deed seem to be correctly described in the bill. That on the 10th day of September 1868, for a valuable consideration, the said Loneberger assigned, transferred and delivered the said obligation to plaintiff by an endorsement on the back thereof. The obligation with the endorsement thereon is filed with the bill as "Exhibit B." The bill further alleges that the whole of said obligation is still unpaid, except the sum of $47.25 aforesaid; that the said obligation constitutes a vendor's lien upon the said tract of land, &c. The bill makes the said Hayes and Loneberger parties defendant thereto, and no other person or persons, and prays that said tract of land be sold to satisfy the said obligation, and for general relief.

At a circuit court held for the county of Barbour, on the 14th day of April 1869, the defendant Hayes appeared in court, by his counsel, and with the leave of the court, filed his answer to the plaintiff's bill. The answer is as follows:

" *The answer of William M. Hayes to the bill exhibited against him and others in the circuit court of Barbour county, by Charles Harmison:*

For answer to said bill, respondent says it is true that he purchased from his co-defendant, Loneberger, the land in the bill mentioned, at the price and payable as therein stated, and that all has been paid except the amount remaining due upon said last obligation. Respondent admits also, that a lien was retained upon said land to secure the payment thereof, and that he refused to pay the same to the complainant. The said Loneberger represented to this respondent at the time of said purchase, that he had good title to all of said land, and executed to respondent a deed with covenants of general warranty for the land, as will appear by the copy of said deed filed with said bill. After respondent's purchase, and after he had paid much the larger portion of said purchase money, he learned that three undivided sevenths of the said land never belonged to the said Loneberger, and were in fact then owned by one William P. Wilson. Respondent declined to pay any more of the said purchase money until said title was obtained, but upon repeated assurances of Loneberger that the said Wilson had no just claim to said land, and that he would extinguish and remove the same by obtaining a release thereof from Wilson. Respondent was induced to pay, and did pay, all the rest of the purchase money, except the amount remaining unpaid as set up in the bill, which is not more than the actual value of said three-sevenths when compared with the average value of the whole tract. Respondent before the last aforesaid obligation became due, repeatedly warned said Loneberger that unless he would clear his title from the said claim of Wilson, he would withhold sufficient of the purchase money to buy in that claim. Failing continually to do so, respondent finding that Loneberger never intended to do it, purchased the said three-sevenths of said land from said Wilson, at the price of $428.57, or $10.00 per

acre, which is not more than its fair actual average value. To have lost these three-sevenths, would have almost destroyed the value of the whole tract, and respondent certainly never would have bought the same if he had not thought he was getting the whole title to the land. The manner in which these three-sevenths remained outstanding, was as follows: Isaac Booth, who formerly owned the land, sold one hundred acres of the same to one James England, more than thirty years ago, who paid for the same all the purchase money, took possession of, cleared the land, and resided thereon until his death in 1850. Although entitled to a conveyance of the legal title thereto, no deed was ever executed to said James England for the land. James England died intestate, leaving the following children surviving him, who are his heirs at law, and to whom the said land descended, the naked title still outstanding in Booth, who died in 1858 without ever having conveyed the legal title to any of the heirs of said England. The names of said heirs at law of James England are David England, John England, Jane England, Archibald England, Malinda England, who intermarried with Jacob Able, Rebecca England, who intermarried with Adam Gower and Elizabeth England who intermarried with William Roberts. The said Isaac Booth, several years after the death of said James England, sold the said one hundred acres and other land adjoining the same to said Loneberger, which together constitute the land sold by Loneberger to this respondent. At the time of said sale of said Booth to Loneberger he represented himself as owning the whole of said one hundred acres, having, as he alleged, bought out the interest of the several heirs of James England in said land. Respondent cannot say whether such was the fact or not; he confesses a great desire that the same shall prove to be the case, but from all the facts he has been able to learn, he is obliged to say that the same is not true. He is able to state and declare that the said Malinda Able, Rebecca Gower and Elizabeth Roberts

and their husbands, have sold and conveyed their interests in said land to Wm. P. Wilson, and they are the same interests purchased from said Wilson by respondent, and are fully worth the balance of said purchase money due to Loneberger. Respondent has recently learned, and he charges the same to be trne, that the said Loneberger has withheld payments of a large amount of the purchase money, to-wit: $159.65 with interest from 1858 or 1859, which he agreed to pay to said Booth for the same defect of title, and his suit for that purpose is still pending and undetermined in this court, of which proper proof, if required, will be offered. All that this respondent ever desired was to be protected in his purchase, and the full benefit thereof secured to him. And having answered, he prays to be hence dismissed with costs."

Loneberger also filed his answer in the cause, which is as follows:

" *The separate answer of Jacob Loneberger to a bill in chancery filed in the circuit court of Barbour county against him and others by Charles Harmison.*

This respondent, saving to himself the full benefit of all exceptions to said bill for answer thereto, says that it is true as stated in said bill, that this respondent did sell to his co-defendant, Hayes, the tract of land in the bill mentioned at the time therein stated. He further admits that all the purchase money for said land has been paid except the sum of $466.66⅔, as stated in said bill, and that the sum of $47.25 has been paid upon that. Further answering respondent says, that he believes that three-sevenths of one hundred acres of the land sold by him to said Hayes, did at one time belong to one Wm. P. Wilson, or at least the said Wilson had or professed to have some sort of a title for the said three-sevenths but this respondent utterly denies that the said Wilson now has, or has at any time within the last ten or twelve years had any shadow of title to the said land, or any

part thereof. Respondent further says, that the legal title to said land was vested in one Isaac Booth for more than forty years, and was never out of him until he conveyed it to this respondent; that many years ago said Isaac sold the said one hundred acres, out of which said Wilson is now claiming three-sevenths, to one James England; that said James England lived upon said land until he died, and upon his death the same descended to his children; that said Isaac Booth being all the time the owner of the legal title, bought out the interests of all of said England's heirs, except those claimed by said Wilson, and afterwards he bought out all the interests in said land which the said Wilson claimed; that said Booth and Wilson were business men living in the same neighborhood, and had frequent transactions together, and that upon a settlement between them some time about the year 1856, the title of said Wilson to three-sevenths was extinguished by said Booth. This respondent further says, the possession accompanied with the indisputable legal title has been, ever since the year 1851 or 1852, in said Isaac Booth and those claiming under him, a period of seventeen or eighteen years; and respondent is therefore advised that it is too late for said Wilson or said Hayes to shirk the claim set up in said bill, because the statute of limitations presents an effectual bar thereto, upon which this respondent here relies as fully as though the statute of limitations was formally pleaded. This respondent says that after he bought the land, which he sold to said Hayes, from Isaac Booth, he was sued upon one of his notes given for the purchase money, and he did avail himself of this defect in the title, but that long ago he found out that the pretensions of said Wilson were utterly futile and groundless, and that no man knows it better than the said Wilson and his co-defendant Hayes. Having fully answered, this respondent prays to be dismissed hence with reasonable costs."

The plaintiff filed a replication to the answer of said Hayes, as follows. "This repliant re-affirms all the

matters set forth in said bill, and by way of replication to the said answer says, that it is probably true that said William P. Wilson was at one time the owner of three-sevenths of the one hundred acres of land spoken of, but that long before the death of the said Isaac Booth, he, said Booth, bought the said three-sevenths from said Wilson; that said Booth had for forty years been the owner of the legal title; and after the death of James England, he, said Booth, bought out the interests of all the heirs of said England, including the widow's third, and also the said three-sevenths, which some of the said heirs had sold to Wilson. Repliant further says that the said Hayes well knew that said Wilson had no valid title to said three-sevenths, or any other portion of said land. Repliant therefore again prays that the said land may be sold to satisfy the debt mentioned in his said bill, and that he may have such other and general relief as the court may see fit to grant.

Several depositions were taken and filed in the cause by the parties, and on the 20th day of April, 1870 the court made and entered this decree, viz: " This cause came on this day to be heard upon the bill, answer of Jacob Loneberger, general replication thereto, answer of William M. Hayes, special replication thereto, exhibits and depositions; and was argued by counsel. On consideration whereof the court is of opinion that the defendant, Jacob Loneberger, had not good title to three undivided sevenths of the tract of one hundred acres of land formerly owned by James England, which with other lands was conveyed by him to said William M. Hayes, and that the said Hayes had purchased the three-sevenths from William P. Wilson at the price of $10.00 per acre, which amounts to the sum of $428.57; and that the same ought to be applied as a credit upon the obligation of said Hayes for $466.66⅔ in the bill mentioned as of the day of its date and that nothing is therefore due thereon to the complainant. And the court is further of opinion that the defendant, Jacob Loneberger, assigned the said obliga-

tion of $466.66⅔ to the complainant on the 10th day of September 1867, for the sum of $400.00 received from the complainant, and that by reason thereof he is liable only to the complainant for the said sum of $400.00 with interest as aforesaid, subject to a credit of $47.25, received from defendant William M. Hayes on the 10th day of August 1868; therefore it is adjudged, ordered and decreed that the said William M. Hayes from the payment of the said obligation of $466.66⅔ and the interest thereon is forever discharged, and that complainant pay to the defendant William M. Hayes his costs, by him about his defense in this behalf expended. And it is further adjudged, ordered and decreed, that the defendant Jacob Loneberger do pay to the complainant the sum of $412.83, being the aggregate of the balance of said $400.00 and its interest, subject to credit aforesaid, with interest on said aggregate from the 20th day of April 1870 until paid, together with his costs by him about the prosecution of his suit in this behalf expended, and the costs hereinbefore decreed to be paid by complainant to the said William M. Hayes.

The deed from Booth deceased to Loneberger, or a copy thereof, is not filed in the cause, although the fact of such a deed having been made is referred to in several parts of the testimony and pleadings. There is nothing in the record, from which it can be ascertained at what time Loneberger purchased the land from said Booth, or at what time Loneberger took possession of the same under his purchase from Booth. It seems to be admitted in the answer of Loneberger, that said Booth obtained or extinguished during his life the equitable title of England's widow and four of the heirs of said England; but from the evidence it would seem, that Loneberger obtained a deed from some or all the legal heirs of Archibald England, one of the sons of James England, deceased, in 1868. Defendant Hayes in his answer seems to admit, that Loneberger had the title to four-sevenths of the one hundred acres, sold by Booth to James Eng-

1877.
August Term.

Harmison
v.
Loneberger *et al.*

land, but claims that there are three undivided sevenths of said one hundred acres that never belonged to Loneberger, and were in fact owned by William P. Wilson. That said three-sevenths are the shares of Malinda Able, Rebecca Gower and Elizabeth Roberts and their husbands, and these three shares he (Hayes) alleges were sold and conveyed by the owners thereof to said William P. Wilson. He (Hayes) further alleges in substance, that Loneberger failing continually to clear the title from the claim of said Wilson, and finding that Loneberger never intended to do it, he (Hayes) purchased the said three-sevenths of said land from said Wilson at the price of said $428.57, or $10.00 per acre, which is not more than its fair actual average value. It appears that there is a part of the purchase money, which Loneberger contracted to pay Booth for said land, unpaid, or was at the time the deposition of said Loneberger was taken, which is filed in the cause; and it no where appears that it has since been paid. The fair inference is that at the time Loneberger's deposition was taken, that it was then in litigation. The deed from Booth to Loneberger, if made, not being filed nor a copy thereof, it cannot be ascertained whether Booth retained a lien for the unpaid purchase money but it is probable he may have done so. There is no sufficient evidence in the cause showing the conveyance of the said three-sevenths of said one hundred acres of land to said Wilson, nor is there any writing or sufficient evidence in the cause to establish the fact, that said Wilson ever had legal or equitable title to said three-sevenths. It is true that Loneberger says in his answer, that said Wilson did at one time claim or profess to have some sort of title for the said three-sevenths; but he denies that said Wilson "now has, or at any time within the last ten or twelve years had, any shadow of title to said one hundred acres or any part thereof;" and he further alleges, that said Booth, being all the time the owner of the legal title, bought out the interests of all of said England's heirs except those claimed by said Wilson,

and afterwards he bought all the interest in said land which the said Wilson claimed. As before stated, it does not sufficiently appear that said three-sevenths of said one hundred acres of land was ever conveyed to said Wilson. The character and extent of said Wilson's claim of title is not shown. It appears that he claimed for a long time to have the title bond or bonds of Mrs. Able, Gower and Roberts, and their husbands, for said three-sevenths of said one hundred acres of land. If Wilson had only the title bond or bonds of these parties, he may not have even an equitable claim and right to demand the fee simple title to said three-sevenths of said one hundred acres. There is no deed or copy of a deed from Wilson to said Hayes for said three-sevenths of said one hundred acres of land; nor is there any contract in writing of any description appearing in the cause between said Wilson and Hayes for the sale and purchase of said land. The personal representative of Isaac Booth should have been made a party to this suit, before the same was heard and determined. As the case now appears, the estate of said Booth is interested in the result of this suit, and the personal representative of Booth is a necessary party thereto, to the end that full and complete justice be done in the cause.

While the character or extent of the claim of said Wilson to said three-sevenths of said one hundred acres of land at any time does not sufficiently appear, still it does appear in the cause as it now stands, that the title to said three-sevenths of said one hundred acres of land was never purchased or extinguished by said Booth, unless he purchased the same from said Wilson, and upon that question the evidence is conflicting. Still if Booth did purchase from Wilson, the evidence fails to show sufficiently, what character of title Wilson had to said three-sevenths and the extent of it. If he (Wilson) had only a title bond or bonds of the married women and their husbands, who were the owners of said three-sevenths, it is probable that the title bonds would only

invest him with an equitable interest in the life estate of the husbands in said three-sevenths of said one hundred acres, though that question is not now decided. It is manifest that this cause was prematurely heard and decided by the circuit court, and that the final decree rendered in the cause is erroneous. It may be, there should be other parties made to the cause, but that we cannot now determine, owing to the state of the cause as made by the record. Other parties may or may not be necessary—that depends upon facts not sufficiently disclosed by the record at present. While the said decree is erroneous and must be reversed, still under the circumstances it is manifest, that it is just and proper, that the cause should be remanded to the circuit court with leave to the plaintiff to file an amended bill, making the personal representative of Isaac Booth, deceased, a party defendant in the cause, and such other persons as may be proper and necessary to a just and proper decision of the cause, and with leave to each of the parties to take and file such other and further depositions and documentary evidence in the cause, as may be necessary and proper to a rightful and just determination of all questions therein arising, according to the rules and principles of equity. If Isaac Booth, during his life, made to Loneberger a deed for said land, and retained a lien therein on the land for the unpaid purchase money, 'it is perhaps proper the assignee or assignees of such purchase money, if there be such assignee or assignees, should be made defendants in the cause.

For the foregoing reasons the decree of the circuit court of the county of Barbour, rendered in this cause, must be reversed, with costs to the appellant against the appellee Harmison ; and this cause must be remanded to the circuit court of the county of Barbour, with leave to the plaintiff to file an amended bill, making the personal representative of Isaac Booth, deceased, and such other person, or persons, as are necessary and proper to a rightful decision of the cause, parties thereto, and with

1877.
August Term.

Harmison
v.
Loneberger *et al.*
leave to all parties to the cause, to take and file such other and further depositions and documentary evidence in the cause, as may be necessary and proper to a rightful and just·determination of all questions arising in the cause according to the principles of· equity, and for such other and further proceedings to be had in the cause in said circuit court, as may be in accordance with the principles and rules governing courts of equity.

DECREE REVERSED and cause remanded.